981 S.W.2d 72 (1998)
In the Interest of M.M.O.
Nos. 04-96-01012-CV, 04-97-00931-CV.
Court of Appeals of Texas, San Antonio.
July 29, 1998.
Rehearing Overruled October 28, 1998.
*75 Deborah A. Verbil, Sp. Asst. Atty. Gen., Rhonda Amkraut Pressley, Asst. Atty. Gen., Child Support Enforcement Div., Austin, for appellant.
Steven A. Sinkin, E.B. Barretto, Law Offices of Sinkin & Barretto, P.L.L.C., Richard R. Orsinger, Clarence C. Felder, San Antonio, for appellee.
Before HARDBERGER, C.J., and RICKHOFF and STONE, JJ.
RICKHOFF, Justice.
This case arises from the failure of the attorney general's office to collect accrued interest on delinquent child support in thousands of child-support enforcement actions it *76 has filed. Two child-support obligees sought to redress this failure by way of a class action. The case followed a procedurally unusual course, ultimately resulting in an order certifying two types of claims as a class action: 1) claims involving setting aside or modifying prior enforcement orders, and 2) a claim for a declaratory judgment regarding the Attorney General's obligation to collect accrued interest. Because the claims involving prior enforcement orders do not present justiciable controversies given the procedural posture of the case, we vacate the order to the extent it certified those claims as a class action. We also conclude that the trial court abused its discretion by certifying the declaratory judgment action as a class action without requiring the class representatives to establish that certification was appropriate with regard to that action. Therefore, we reverse the order to the extent it certified the declaratory judgment action.

THE UNDERLYING CONTROVERSY
The Texas Family Code provides that a child support payment not timely made constitutes a final judgment for the amount due and owing, including interest. See TEX. FAM. CODE ANN. § 157.261(a) (Vernon Supp.1998); see also Medrano v. Medrano, 810 S.W.2d 426, 428 (Tex.App.-San Antonio 1991, no writ). Interest accrues on the delinquent child support payment from the date the support is delinquent until it is paid or the arrearages are confirmed and reduced to a money judgment. See TEX. FAM.CODE ANN. § 157.265(a) (Vernon 1996). Accrued interest becomes part of the child support obligation and may be enforced by any means provided for the collection of child support. See id. § 157.267. In rendering a money judgment, the trial court may not reduce or modify the amount of child support arrearages. See id. § 157.262(a).
Title IV-D of the Social Security Act requires states to provide services relating to the enforcement of child support obligations for children who receive government assistance payments and for other children whose guardians request the services. See 42 U.S.C. § 654(4) (1988). In Texas, the office of the attorney general has been designated to provide the Title IV-D services. See TEX. FAM.CODE ANN. § 231.001 (Vernon 1996). Despite the state-law provisions for collecting accrued interest on delinquent child support obligations, the Attorney General has stipulated that "[b]efore July 1, 1996, interest was not included in the substantial majority of orders adjudicating child support arrearages in Title IV-D cases."[1]

PROCEDURAL HISTORY
M.M.O.'s father became delinquent in his child support obligation, and the Attorney General filed a motion for enforcement. In March 1995, the Attorney General obtained a judgment against the father for $4,575 in unpaid child support. M.M.O.'s mother, Maria, later retained a private attorney and filed a Motion for Judgment Nunc Pro Tunc and for Enforcement of Child Support Order. She alleged that the March 1995 enforcement order contained a clerical error because it did not include accrued interest on the overdue child support payments. In October 1996, the trial court granted the motion for judgment nunc pro tunc and modified the judgment to include interest in the amount of $22,199.71.
The Attorney General also filed a motion for enforcement against the father of N.A.W. and Z.U.W. On June 26, 1996, the trial court signed a judgment against the father for $3,482.50. On July 25, 1996, the mother, *77 Deidre, filed a motion for new trial, asserting that the judgment erroneously failed to include accrued interest. On September 4, 1996, the trial court set aside the judgment. Thereafter, the trial court signed a judgment against the father for $8,157.11.
On November 20, 1996, Maria, individually and as next friend of M.M.O., and Deidre, individually and as next friend of N.A.W. and Z.U.W., filed a motion for class certification in the 166th Judicial District Court. They sought to urge the motion for judgment nunc pro tunc and the motion for new trial on behalf of a class of child support recipients who have motions for enforcement of child support arrearages pending and all child support recipients affected by enforcement orders that fail to include accrued interest on child support arrearages. They requested that the enforcement orders be corrected to include accrued interest on child support arrearages. The motion did not expressly name any defendants, either individually or as a class. The Attorney General filed a petition in intervention "to protect the State of Texas' interest in promoting the best interest of Texas' children."
At the class-certification hearing, the class representatives, their counsel, an assistant attorney general, and an attorney for the father of N.A.W. and Z.U.W. appeared. No one voiced an objection to class certification. At the conclusion of the hearing, the trial court signed an order certifying the class (hereafter "first order"). Although the motion for class certification did not expressly seek any relief from, or request any action by, the Attorney General or the State of Texas, the first order required the Attorney General to send notice to the class members, to begin filing enforcement proceedings on behalf of class members by March 15, 1997, and to seek attorney fees on behalf of the class. The notice to class members accompanying the first order explained that the Attorney General would seek enforcement of the full amount of child support arrearages, including interest, and that class counsel would act as counsel for the class "solely for the limited purpose of monitoring the enforcement of the Court's orders relating to The Attorney General of Texas seeking enforcement of the full amount of child support arrearages."
The Attorney General perfected an interlocutory appeal from the first order (appeal number 04-96-01012-CV). After his brief was filed, the class representatives decided to tack and raise the spinnaker. They filed an Amended Motion for Class Action Certification and Petition for Relief (hereafter "amended motion"), which reasserted the allegations of the first motion to certify a class and again stated that the class representatives sought to urge their motion for judgment nunc pro tunc and motion for new trial on behalf of the class. In addition, the amended motion sought a declaratory judgment against the Attorney General and the State.
Upon the filing of the amended motion, the Attorney General found it necessary to seek more favorable winds and so removed the case to federal court. After the federal court remanded the case, the trial court rescinded the first order and signed a new order certifying a class (hereafter "second order"). The second order differed from the first order in that it did not require the Attorney General to send notices to class members or file enforcement actions. The Attorney General and the State of Texas (hereafter "the appellants") filed in this court a motion for review of the second order as part of the pending interlocutory appeal of the first order. The appellants also perfected a separate appeal from the second order (appeal number 04-97-00931-CV). On March 9, 1998, this court stayed further proceedings in the trial court.

ELECTION OF REMEDIES
The class representatives contend that the Attorney General cannot pursue these appeals because he made an election of remedies by removing the case and challenging the class certification order in federal court. This contention is erroneous for several reasons.
First, "[a]n election of remedies is the act of choosing between two or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts." Custom Leasing, Inc. v. *78 Texas Bank & Trust Co., 491 S.W.2d 869, 871 (Tex.1973) (emphasis added). When a party chooses to exercise one of the modes of procedure or relief, the party abandons the right to exercise the other procedure or remedy and is precluded from resorting to it. See id. A fundamental premise of the doctrine of election of remedies is that the alternative procedure or remedy must actually exist. See Poe v. Continental Oil & Cotton Co., 231 S.W. 717, 719 (Tex. Comm'n App.1921, holding approved). Here, the alternative of proceeding in federal court was not actually available to the Attorney Generalthe federal court remanded the case without considering the Attorney General's class-certification complaints.
Second, the sole purpose of the doctrine of election of remedies is to prevent double recovery for a single wrong. See Green Oaks, Ltd. v. Cannan, 749 S.W.2d 128, 131 (Tex.App.-San Antonio 1987), writ denied per curiam, 758 S.W.2d 753 (Tex.1988). Consequently, it is ordinarily asserted by defendants to bar a plaintiff's recovery. See Watson v. Nortex Wholesale Nursery, Inc., 830 S.W.2d 747, 750 (Tex.App.-Tyler 1992, writ denied). In this case, it is the plaintiffs who assert the doctrine, and the concept of a double recovery is simply inapplicable on these facts.
Finally, the doctrine of election of remedies is not a favorite of equity and its scope therefore should not be extended. See Custom Leasing, 491 S.W.2d at 871. The class representatives have not cited any authority holding that removal of an action to federal court is an election of remedies. We will not extend the doctrine to this situation.

RULE 43
The appellants argue that the trial court lacked authority to sign the second order because the appeal of the first order was pending before this court.
Because the appeal from the first order was perfected before September 1, 1997, the "old" appellate rules apply to that appeal. See Order on Final Approval of Revisions to the Texas Rules of Appellate Procedure, Item 2 (Tex.Sup.Ct., Aug. 15, 1997). Former Rule 43(d) governed the trial court's ability to issue orders pending an interlocutory appeal. The rule provided:
Pending an appeal from an interlocutory order, the trial court retains jurisdiction of the cause and may issue further orders, including dissolution of the order appealed from, but the court shall make no order granting substantially the same relief as that granted by the order appealed from, or any order contrary to the temporary orders of the appellate court, or any order that would interfere with or impair the effectiveness of any relief sought or granted on appeal.[2]
Additionally, Rule 43(f) provided that during the pendency of an interlocutory appeal, an appellate court could review subsequent orders concerning the same subject-matter and any interlocutory order that would interfere with or impair the effectiveness of the relief sought or granted on appeal.[3] This rule is the basis for the appellants' motion for review of the second order.
By its express terms, Rule 43(d) allowed the trial court to rescind the first order. Although the appellants do not challenge the trial court's decision to rescind that order, they argue that the court erred by issuing the second order because it grants substantially the same relief as that granted by the order appealed from and because it interferes with and impairs the effectiveness of the relief sought on appeal.
The purpose of Rule 43(d) is to prevent the trial court from interfering with a party's right to appellate review or the appellate court's power to grant relief in interlocutory appeals. See Eastern Energy, Inc. v. SBY Partnership, 750 S.W.2d 5, 6 (Tex.App.-Houston [1st Dist.] 1988, no writ); see also *79 Pierce Mortuary Colleges, Inc. v. Bjerke, 841 S.W.2d 878, 881 (Tex.App.-Dallas 1992, writ denied). This purpose is reflected in Hopper v. Safeguard Business Systems, Inc., 787 S.W.2d 624 (Tex.App.-San Antonio 1990, no writ), a case relied on by the appellants. In Hopper, the trial court granted a temporary injunction without stating either in the order or in open court the reasons for the injunction. We held that the order was void because the reasons for the issuance of an injunction are critical to the foundation of the injunction. See Hopper, 787 S.W.2d at 626. While the appeal was pending, the trial court signed an amended order that was apparently the same as the first order except that it included reasons for granting the injunction. Refusing to allow this post hoc reasoning to effect an "end run" around the appeal, we set aside the second order. See id. at 626-27.
Whereas the second order in Hopper granted the same relief as the first and merely added reasons to support the trial court's decision to grant the injunction, the second order in this case granted less relief than the first orderit omitted the provisions requiring the Attorney General to send notices to class members and to file enforcement actions. Cf. St. Louis Southwestern Ry. v. Voluntary Purchasing Groups, Inc., 929 S.W.2d 25, 33 (Tex.App.-Texarkana 1996, no writ) (trial court abused its discretion by issuing second certification order because it "grant[ed] substantially the same relief, as well as additional relief"). The second order does not grant substantially the same relief as the first order.
Neither does the second order interfere with or impair the relief sought on appeal. In his brief for the appeal of the first order, the Attorney General argued that the trial court erred by requiring him to send notices and file enforcement actions. As we have already noted, the second order does not impose these requirements. Thus, the effect of rescinding the first order and replacing it with the second order was to grant the appellants part of the relief they initially sought on appeal. Other aspects of the first order that the appellants found offensive are carried forward in the second order. We can review those aspects just as effectively in the appeal from the second order as we could in the appeal from the first order. See Eastern Energy, 750 S.W.2d at 6. We therefore grant the appellants' amended motion for review of the second order, but we hold that the second order does not violate Rule 43(d).

JUSTICIABILITY
We have jurisdiction over the appeal from the trial court's order certifying the class pursuant to section 51.014 of the Texas Civil Practice and Remedies Code. See TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(3) (Vernon Supp.1998). In an appeal under section 51.014(a)(3), we do not consider questions related to the merits of the class claims, nor do we consider the probability of the class's success on the merits. See Microsoft Corp. v. Manning, 914 S.W.2d 602, 607 (Tex. App.-Texarkana 1995, writ dism'd). We may, however, consider all matters pertaining to class certification encompassed within the certification order. See American Express Travel Related Servs. Co. v. Walton, 883 S.W.2d 703, 707 (Tex.App.-Dallas 1994, no writ).
One matter necessarily encompassed by any class-certification order is an implied or express finding that a justiciable controversy exists. See Cedar Crest Funeral Home, Inc. v. Lashley, 889 S.W.2d 325, 330 (Tex.App.-Dallas 1993, no writ) ("[I]f the purported class representative fails to establish the requisite of a litigable controversy, he may not obtain relief on behalf of himself or any member of the class."); Texas Dep't of Mental Health & Mental Retardation v. Petty, 778 S.W.2d 156, 164 (Tex.App.-Austin 1989, writ dism'd w.o.j.) This is so because a litigable controversy is required in order for the court to exercise subject matter jurisdiction over any case, be it a class action or not. See Texas Ass'n of Business v. Texas Air Control Bd., 852 S.W.2d 440, 445-46 (Tex. 1993); Lashley, 889 S.W.2d at 329-30; Petty, 778 S.W.2d at 164; cf. O'Reilly v. Brodie, 975 S.W.2d 57 (Tex.App.-San Antonio 1998, no pet. h.) (dismissing appeal of non-class members from order approving class action settlement for lack of standing). The issue of subject matter jurisdiction cannot be waived and may be raised for the first time *80 on appeal by a party or by the court. See Texas Ass'n of Business, 852 S.W.2d at 445. Thus, in reviewing the propriety of the trial court's decision to certify this class action, the first question we must address is whether a justiciable controversy exists. It is to that task that we now turn.
A. The Claims Involving Child-Support Obligors
1. Advisory Opinions
A justiciable controversy is one that will be actually determined by the judicial declaration sought. See id. at 446. If litigation of the controversy will result only in an advisory opinion, the controversy is not justiciable. See id. at 444. "The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties." Id. A judicial declaration is generally not binding on persons who are not parties to the proceeding or who, although named as parties, did not receive notice of the proceeding. Cf. Avila v. St. Luke's Lutheran Hosp., 948 S.W.2d 841, 847 (Tex.App.-San Antonio 1997, pet. denied) ("Due process requires that collateral estoppel operate only against persons who have had their day in court, either as a party to the prior suit or as a privy."); TEX.R. CIV. P. 42(c)(3) (class action judgment binding only on those who received notice). This is because "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Consequently, due process under the federal and state constitutions requires that defendants to a class action receive notice before a class-certification hearing and have an opportunity to be heard on the question of certification. See Rio Grande Valley Gas Co. v. City of Pharr, 962 S.W.2d 631, 646-47 (Tex.App.-Corpus Christi 1997, pet. filed); Mahoney v. Cupp, 638 S.W.2d 257, 260 (Tex.App.-Waco 1982, no writ); WILLIAM V. DORSANEO, 1 TEXAS LITIGATION GUIDE § 13.06[2][a] (1998); see also Parker County v. Spindletop Oil & Gas Co., 628 S.W.2d 765, 769 (Tex.1982); Palais Royal, Inc. v. Partida, 916 S.W.2d 650, 653 (Tex.App.-Corpus Christi 1996, orig. proceeding [leave denied]).
One of the more unusual aspects of this case is that the parties have expended considerable energy debating who the defendants to the class action are. Neither the original motion for class certification nor the first order names any defendants. The amended motion states that the class representatives are "complaining against [the fathers of M.M.O., N.A.W., and Z.U.W.], Individually and as representatives of a class of obligors and complaining against the State of Texas and/or the Attorney General of the State of Texas." Despite this language, no effort has been made to certify the class of obligor defendants.[4]
One of the common questions listed in the amended motion to be resolved in the class action is whether enforcement orders that failed to include interest are void. These enforcement orders operate against the child-support obligors. The amended motion seeks the following relief:
It is requested that each of the [child support enforcement] orders and writs of withholding be corrected.... Representatives further request that the orders and writs of withholding be corrected so that each child support obligor be required to bring the arrears current .... It is requested that the orders of enforcement for child support arrearages be deemed void and unenforceable and inapplicable as to the amount of child support owed to the obligee and the children..... It is further requested that ... corrected writs of withholding be issued to accurately reflect the amount of arrears and accrued interest. The aforementioned relief is urged on behalf of representatives and is urged on behalf of the class identified below, individually *81 and as next friends of the children affected thereby.
(emphasis added). This relief, expressly sought on behalf of the class of plaintiffs, can only be obtained from the child-support obligors. It thus appears that the class representatives are seeking a determination that all class members can set aside or modify prior judgments entered against their corresponding child-support obligors. Yet the class representatives have not sought certification of a defendant class of obligors, and they have not provided notice to any obligors other than the two putative representatives of the defendant class.
Perhaps realizing that any attempt to bind the child-support obligors would not withstand due process scrutiny by this court, the class representatives assert on appeal that at this time the class is only proceeding against the Attorney General on issues that may properly be determined in litigation between the class and the Attorney General. See TEX.R. CIV. P. 42(d)(1) (class action may be maintained with respect to discrete issues within a larger action). They state that they may seek to certify a defendant class of child-support obligors on a later date. However, the time for providing notice to the obligors is before decisions purporting to affect their rights have been made. The certification order does not purport to carve out limited issues from the amended motion to be determined in the class action. And the class representatives' appellate brief lists the issue of whether prior enforcement orders are void as a question to be determined in the class action.[5] Any determination of this issue resulting from litigation between the appellants and the class of plaintiffs would not be binding on the child-support obligors. The determination would thus be an advisory opinion, which the trial court is without jurisdiction to render. Therefore, the trial court abused its discretion in certifying the claims seeking to set aside or modify prior enforcement orders.
2. Standing
For any case, including a class action, to be justiciable, the plaintiff must have standing to sue. See Texas Ass'n of Business, 852 S.W.2d at 445-46; Lashley, 889 S.W.2d at 329-30 ("[I]t is by now well established that before a plaintiff may establish his competency to represent a class under rule 42, he must first meet the threshold requirement of standing to bring the action."); see also United States Parole Comm'n v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). But see Clements v. League of United Latin American Citizens, 800 S.W.2d 948, 951 (Tex.App.-Corpus Christi 1990, no writ) (holding that in a class action, the court would review standing only through Rule 42's requirement that class representatives have claims typical of the class and will adequately protect class interests).
Standing is one aspect of mootness. See Tarrant County, Texas Commissioners Court v. Markham, 779 S.W.2d 872, 876 (Tex.App.-Fort Worth 1989, writ denied). The mootness doctrine prohibits courts from deciding cases unless the issues are "live" and the parties have a cognizable interest in the outcome. See Rocky v. King, 900 F.2d 864, 867 (5th Cir.1990); Markham, 779 S.W.2d at 876. To prevent a case from being declared moot, a party's personal stake in the litigation generally must exist not only at its commencement, but at all stages of the litigation. See Markham, 779 S.W.2d at 876. Because a personal stake in the litigation is necessary for justiciability, courts have held that a class action is moot when the class representatives' claims become moot before they seek class certification. See, e.g., Lusardi v. Xerox Corp., 975 F.2d 964, 976-77 (3d Cir.1992); Rocky, 900 F.2d at 868-69; Calaway v. Foxhall, 603 S.W.2d 363, 364 (Tex.Civ.App.-Houston [14th Dist.] 1980, no writ).[6]
*82 Here, the class representatives' claims regarding the prior enforcement orders became moot before they sought class certification. Deidre was granted a new trial on September 6, 1996, and an arrearage judgment in October 1996. Maria was granted a judgment nunc pro tunc on October 23, 1996. But the first motion for class certification was not filed until November 20, 1996. Because both class representatives had already received the relief they sought when they moved for class certification, they had no personal stake in litigation seeking to set aside or modify prior enforcement orders.
To establish that they have standing, even though they no longer have a personal stake in the litigation regarding the prior enforcement orders, the class representatives rely on Health & Tennis Corp. of America v. Jackson, 928 S.W.2d 583 (Tex.App.-San Antonio 1996, writ dism'd w.o.j.). In Jackson, the class representative initially sued two defendants. He settled his claim with one of the defendants pursuant to an agreement that specifically excluded his claims against the other defendant. On appeal from an order certifying the class, the remaining defendant claimed that the class representative had already received more money from his settlement with the other defendant than he was seeking in the action against the remaining defendant. The defendant therefore argued that the class representative lacked standing because his claim was barred by the "one satisfaction" rule. We held that although the one satisfaction rule might afford the defendant an affirmative defense, it had no bearing on the class representative's standing to sue. See Jackson, 928 S.W.2d at 587.
Jackson did not purport to relax traditional standing and mootness requirements in the class-action context. It merely stands for the proposition that a cause of action is not moot and a plaintiff is not without standing after the plaintiff has recovered damages from a person other than the defendant. This proposition is equally applicable in class and non-class actions. In this case, however, the class representatives seek to reurge motions seeking the same relief against the same obligors from whom they have already recovered, except that this time they also seek to urge the motions on behalf of the class. Consequently, Jackson is inapposite.
The class representatives' claims regarding the prior enforcement orders were moot when they sought class certification. Therefore, they do not have standing to represent the class regarding those claims.[7]
B. The Declaratory Judgment Claims
A declaratory judgment action is merely a procedural device for deciding cases already within a court's jurisdiction rather than an enlargement of a court's power. See Texas Ass'n of Business, 852 S.W.2d at 444. Accordingly, a declaratory judgment action does not permit a trial court to render advisory opinions. See id. A court may not use a declaratory judgment to pass upon hypothetical or contingent situations. See Peacock v. Schroeder, 846 S.W.2d 905, 912 (Tex. App.-San Antonio 1993, no writ).
In their amended motion for class certification and petition for relief, the class representatives seek a declaratory judgment *83 against the Attorney General and the State of Texas as follows:
1. A declaration that all pleadings filed by the Attorney General and contracting agencies for the collection of child support must contain and collect interest;
2. A declaration of their rights "to have, and to have had, the full amount of child support arrearages collected by the Texas Attorney General and its contracting agencies, without offset or discount other than as expressly provided in the Texas Family Code;"
3. A "declaration that class counsel can file enforcement proceedings, secure the issuing or reissuing of writs of withholding, and ... take all other necessary steps to recover past due child support owed to [the class members], including interest on past due child support, that was not sought and/or recovered by the Attorney General and contracting agencies;"
4. A declaration as to whether the State is liable to the class members for lost interest, if they "are not now entitled to recover for the full amount of past due child support, including interest," because of the Attorney General's failure to collect the full amounts in the past;
5. A declaration of the Attorney General's and contracting agencies' "duties and obligations to the class and remedies to the class for their failure to collect the full amount of past due child support including interest."
To the extent item 3 seeks a declaration that prior enforcement orders rendered throughout the state can be reopened, such a declaration would not be binding on the child-support obligorsthe parties against whom the enforcement orders and writs of withholding operate.[8] Item 4 seeks an advisory opinion because it rests on a contingencythe judicial declaration will only take effect if the class members are unable to recover from the child-support obligors. To the extent item 5 requests a declaration of the class members' potential causes of action against the appellants, it too requests an advisory opinion. See Housing Authority of the City of Harlingen v. Valdez, 841 S.W.2d 860, 866 (Tex.App.-Corpus Christi 1992, writ denied).
We construe the remaining requests for declaratory relief set forth in items 1,2, and 5 as a request for a declaration of the appellants' obligation to the class to seek accrued interest in enforcement actions. The appellants argue that at bottom the request for declaratory relief seeks a declaration of the class's rights under sections 157.262 and 157.267 of the Family Code. They assert that the declaratory judgment action therefore does not present a real, justiciable controversy because these statutes impose no duties on the Attorney General and grant no rights to the class. Although the appellants frame this as a jurisdictional argument, the argument actually goes to the merits of what the class representatives seek to establish in the declaratory judgment action, i.e., whether the statutes require the Attorney General to seek accrued interest in the enforcement actions he files on their behalf. Because the argument goes to the merits of the case, it is not a proper consideration in an appeal from a class certification order. See Microsoft, 914 S.W.2d at 607.
We conclude that the requests for declaratory relief contained in items 1,2, and 5, as we have construed them, present real controversies that are ripe for adjudication. As such, they are proper subjects for a declaratory judgment action.

PROPRIETY OF CLASS CERTIFICATION
Having concluded that the class representatives have set forth justiciable claims for declaratory relief, we must next determine the propriety of certifying those claims as a class action.
A. Standard of Review
The trial court's decision to certify a class is subject to review only for an *84 abuse of discretion. See Jackson, 928 S.W.2d at 587. We must view the record in the light most favorable to the trial court's ruling and indulge every presumption in favor of that ruling. See id. Because the appellants did not request findings of fact and conclusions of law, we must presume the court found every factual proposition necessary to sustain the class-certification order, provided the proposition is one raised by the pleadings and supported by the record. See Petty, 778 S.W.2d at 160.
B. Waiver and Estoppel
At the first class-certification hearing, in objecting to one piece of evidence offered by the class representatives' attorneys, the assistant attorney general stated, "I think all the evidence that [counsel] has presented is sufficient to establish the need for certification of a class...." He later stated, "We don't have any opposition to the certification of the class ... and we are here as intervenors to protect the children of the state of Texas and to insure that the proceedings go as they need to be." When the class representatives rested, the assistant attorney general again stated, "We have no opposition to the certification." Class counsel then gave the assistant attorney general a copy of the proposed class certification order. Although the assistant attorney general asked that the judge not sign the certification order until the attorney handling the case for the attorney general's office had a chance to review it, he reiterated that he had "no problem with certification." The judge decided to sign the order and told the assistant attorney general he could seek to modify the order later. Instead of seeking to modify the order in the trial court, the Attorney General filed the first appeal.
The class representatives argue that the assistant attorney general's statements at the first certification hearing constitute a waiver of any complaints about either the first or the second order. Because the first order has been rescinded, we need not decide whether complaints related to that order have been waived.
The class representatives do not clearly state the doctrine upon which they rely to establish waiver. Because they mention estoppel and cite one case involving judicial admissions and another case involving invited error, we construe their argument to be based on theories of judicial estoppel, judicial admissions, and invited error. We conclude that none of these doctrines applies here.
The elements required for judicial estoppel are: 1) a sworn, inconsistent statement made in a prior judicial proceeding; 2) the party who made the statement successfully maintained the prior position; 3) the prior statement was not made inadvertently or by mistake, fraud, or duress; and 4) the statement was deliberate, clear, and unequivocal. See DeWoody v. Rippley, 951 S.W.2d 935, 944 (Tex.App.-Fort Worth 1997, writ dism'd by agr.); Estate of Devitt, 758 S.W.2d 601, 603 (Tex.App.-Amarillo 1988, writ denied). Thus, there are at least two reasons why the assistant attorney general's statements do not trigger judicial estoppel: the statements were not sworn and they were not made in a prior judicial proceeding.
The elements required for a judicial admission are: 1) a statement made during the course of a judicial proceeding, 2) that is contrary to an essential fact or defense asserted by the person making the admission; 3) that is deliberate, clear, and unequivocal, 4) that, if given conclusive effect, would be consistent with public policy; and 5) that is not destructive of the opposing party's theory of recovery. See Burnap v. Linnartz, 914 S.W.2d 142, 152 (Tex.App.-San Antonio 1995, writ denied). Counsel's statements on behalf of a client may serve as judicial admissions. See Sepulveda v. Krishnan, 839 S.W.2d 132, 135 (Tex.App.-Corpus Christi 1992), aff'd, 916 S.W.2d 478 (Tex. 1995). As opposed to judicial estoppel, to qualify as a judicial admission the statement must have been made in the current proceeding. See Holloway v. Holloway, 671 S.W.2d 51, 59 (Tex.App.-Dallas 1983, writ dism'd) (distinguishing judicial estoppel and judicial admissions). Generally, only formal acts will be deemed judicial admissions. See Roberts v. Burkett, 802 S.W.2d 42, 45 (Tex.App.-Corpus Christi 1990, no writ). Because a judicial admission is a waiver of proof, we *85 must apply the judicial admission doctrine with caution. See id.
The assistant attorney general's comments were made before the class representatives amended their petition to seek a declaratory judgment against the appellants. Up to that time, the class representatives had not asserted a cause of action against the appellants. As the assistant attorney general noted, the Attorney General and the class representatives were not "party opponents" then. It is quite natural and not mendacious for a person to offer no opposition to an action in which he is not a defendant. See H.E. Butt Grocery Co. v. Pais, 955 S.W.2d 384, 389 (Tex.App.-San Antonio 1997, no pet.) ("A judicial admission results when a party makes a statement of fact which conclusively disproves a right of recovery or defense he currently asserts.") (emphasis added). Moreover, we do not deal here merely with the competing positions of private litigants. To treat the assistant attorney general's comments as judicial admissions would obligate the State to defend a massive class action with no review being given to the trial court's class certification decision. For these reasons, we conclude that treating the assistant attorney general's comments as judicial admissions would not be consistent with public policy.
For similar reasons, we decline to characterize the class certification as invited error. While the invited error doctrine might have precluded the Attorney General from complaining about the first order, it should not preclude the appellants from complaining about the second order. By appealing the first order and asking the court not to sign the second order, the Attorney General made his opposition to certification well known before the trial court signed the second order. Therefore, it cannot be said that the appellants induced the trial court into the action about which they now complain. Cf. Daniels v. Pecan Valley Ranch, Inc., 831 S.W.2d 372, 382 (Tex.App.-San Antonio 1992, writ denied) (invited error doctrine applies when party complains of action it requested trial court to take).
Finally, the class representatives argue that the Attorney General waived the arguments about the propriety of class certification because he did not present them to the trial court. They note that the trial court informed the assistant attorney general that it would consider modifying the order. It has been held that a party generally may not appeal an order modifying a class unless the party has already perfected an appeal from the original class certification. See Pierce Mortuary Colleges, Inc. v. Bjerke, 841 S.W.2d 878 (Tex.App.-Dallas 1992, writ denied). But see De Los Santos v. Occidental Chem. Corp., 933 S.W.2d 493, 495 (Tex.1996) (order modifying class from opt-out to mandatory was subject to interlocutory appeal). The period for perfecting an appeal from the first order expired twenty days after it was signed. See TEX.R.APP. P. 42(a)(3) (former rule). We will not count the Attorney General's timely effort to preserve his appellate remedy as a waiver of his right to complain about the class certification. See St. Louis Southwestern Ry., 929 S.W.2d at 29.
C. Adequacy of the Hearing
When a suit is commenced as a class action, the trial court "shall, after hearing, determine by order whether it is to be so maintained." TEX.R. CIV. P. 42(c)(1). Although the proponents of class certification are not required to make an extensive evidentiary showing, the failure to conduct a hearing, with an opportunity for the opposing parties to be heard, constitutes an abuse of discretion. See St. Louis Southwestern Ry., 929 S.W.2d at 31; Jackson, 928 S.W.2d at 587.
The appellants argue that the trial court abused its discretion by entering the second order without conducting an adequate hearing. In particular, they argue that they were denied due process because they were not given an opportunity to cross-examine the class representatives or to contest the certification. They also argue that the trial court abused its discretion by not requiring the class representatives to establish the propriety of certifying a class against them.
Neither the State of Texas nor the Attorney General, when sued in his official *86 capacity, is entitled to due process. See South Carolina v. Katzenbach, 383 U.S. 301, 323-24, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966); Collier v. Poe, 732 S.W.2d 332, 344 (Tex. Crim.App.1987); Hill v. Texas Water Quality Bd., 568 S.W.2d 738, 739 (Tex.Civ.App.-Austin 1978, writ ref'd n.r.e.). We will therefore consider the appellants' arguments only to determine whether the trial court committed an abuse of discretion.
At the second certification hearing, the class representatives sought to introduce the record of the prior certification hearing to establish that the class should be certified again. The appellants objected to admitting the record, arguing that because they were not defendants at that time they did not have an opportunity to cross-examine the witnesses. Noting that an assistant attorney general appeared at the prior hearing, the court overruled the objection, admitted the record, and certified the class.
This procedure might have been permissible if the nature of the suit had not undergone such a dramatic change from the time it was first certified as a class action. When the suit was initially certified, the class representatives were seeking relief from the child-support obligors. As we already explained, the trial court abused its discretion in certifying those claims as a class action. By the time of the second certification hearing, the class representatives had added a declaratory judgment action, making the appellants full-fledged defendants. Yet the class representatives made no showing that certification of their declaratory judgment action against the appellants was appropriate. Because the live pleading at the first certification hearing sought different relief against different defendants, the record of that hearing could not satisfy the class representatives' burden of establishing that certification of a declaratory judgment action against the appellants was proper. Although the appellants were represented at the first hearing, they clearly did not have the same incentive to contest the certification at that time. We therefore conclude that the trial court abused its discretion by signing the second order without conducting a sufficient hearing.

ON REMAND
From our appellate shore, it appears that this suit was commenced with a laudable goal. It has been pursued disjointedly, but with great energy. Given the potentially farreaching impact of the litigation, it deserves a thought-through and sound set of objectives and a coherent concept of how those objectives can be achieved in a class action.
This and other courts have recognized that the proponents of class certification are not required to make an extensive evidentiary showing and that trial courts are accorded great discretion in deciding whether to certify a class. See, e.g., Jackson, 928 S.W.2d at 587; Microsoft, 914 S.W.2d at 615. By reversing this certification order, we do not disturb these holdings and we do not impose any new procedural requirements on classcertification hearings. We do, however, remind the trial court that "class actions are extraordinary proceedings with extraordinary potential for abuse." General Motors Corp. v. Bloyed, 916 S.W.2d 949, 953 (Tex. 1996). Because of the potential for abuse, as well as the vast reach and impact of class litigation, the trial court is charged with a tremendous responsibility when it decides whether to certify a class. See id. at 954. The court must not only ensure that the class advocates have satisfied the requirements for class certification, but also recognize and accept the management burdens that will be imposed on the court. With this said, we express no view on whether the trial court should certify a class on remand.[9]
The class-certification order is vacated to the extent it certifies the claims involving *87 prior enforcement orders and reversed to the extent it certifies the declaratory judgment action. The stay entered by this court on March 9, 1998, is lifted, and the cause is remanded to the trial court for further proceedings.
NOTES
[1] Evidence at the first class-certification hearing indicated that the attorney general's office did not have the computer capability to calculate the accrued interest until 1996. The Attorney General stipulated that it instituted a policy of including interest in all orders adjudicating child support arrearages commencing July 1, 1996. The Attorney General also stipulated that "[i]nterest should be included in all orders adjudicating child support arrearages at least from September 1, 1991 and entered on or before November 27, 1996, and interest should be included in all pending cases and orders adjudicating child support arrearages." Regardless of this stipulation, the attorney general's office maintains that it has no duty to collect accrued interest for the benefit of the affected children. The parties also do not agree on what year the law began allowing the attorney general's office to seek accrued interest in child-support enforcement proceedings; the class representatives argue for 1985, and the Attorney General argues for 1991.
[2] Rule 43(d) was replaced by Rule 29.5, effective September 1, 1997. Rule 29.5 does not contain the prohibition against granting substantially the same relief. According to the commentary to Rule 29.5, this prohibition was repealed as being "too broad."
[3] Rule 43(f) was replaced by Rule 29.6, effective September 1, 1997.
[4] Later portions of the amended motion seek a declaratory judgment against the Attorney General's "contracting agencies." These agencies are not named or further described in the petition and there is no indication that they have been served with the petition.
[5] In a brief tendered after oral argument, the class representatives attempt to revise further the questions they hope to resolve in the class action. We deny leave to file the post-submission brief and we confine our review to the definition of the issues in the amended motion, the pleading which forms the basis of the second order.
[6] But a class action does not necessarily become moot when the class representatives' claims become moot pending appeal, particularly if mootness results from the trial court's erroneous denial of class certification. See Geraghty, 445 U.S. at 404 n. 11, 100 S.Ct. 1202.
[7] The appellants argue there is yet an additional jurisdictional barrier to using a class action to modify the prior enforcement orders and writs of withholding. A suit affecting the parent-child relationship, such as a motion to enforce a childsupport obligation, can only be decided by a court with continuing, exclusive jurisdiction over the matter. See TEX. FAM.CODE ANN. § 155.001(c) (Vernon 1996). A court generally acquires continuing, exclusive jurisdiction upon rendition of a final order, such as a divorce decree, setting an amount of child support. See id. § 155.001(a); Ex parte Sustrik, 721 S.W.2d 592, 593 (Tex. App.-Fort Worth 1986, no writ). The appellants assert that this class action contemplates modifying thousands of enforcement orders in the 166th Judicial District Court of Bexar County. But the 166th Judicial District does not have jurisdiction over suits affecting the parent child relationship that are already subject to the continuing, exclusive jurisdiction of other courts. See Alexander v. Russell, 699 S.W.2d 209 (Tex. 1985). Because we have determined that a judicial declaration regarding the prior enforcement orders and writs of withholding would be an advisory opinion and that the class representatives do not have standing to adjudicate these claims, we find it unnecessary to decide whether the Family Code's continuing, exclusive jurisdiction provisions would preclude maintaining these claims as a class action.
[8] Item 3 also appears to request that class counsel be appointed to represent the thousands of individual class members in enforcement actions against their corresponding child-support obligors. This is clearly not a proper issue to be resolved in a declaratory judgment action ostensibly brought on behalf of the class members, not class counsel.
[9] The class representatives request that sanctions be assessed against the appellants. Given our disposition of the appeal, we deny this request.