**AFFIRMED and Opinion Filed February 10, 2022**



In The

### Court of Appeals
### Fifth District of Texas at Dallas

_____

**No. 05-20-01019-CV**
_____

**USAA CASUALTY INSURANCE COMPANY, Appellant**
**V.**
**SUNNY LETOT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-00156-E**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Partida-Kipness, and Justice Carlyle
Opinion by Chief Justice Burns

USAA Casualty Insurance Company appeals the trial court's order granting Sunny Letot's motion to certify a class. In six issues, USAA argues the trial court abused its discretion by (1) certifying a class that is objectively unascertainable, overly broad, and includes members who lack standing; (2) certifying a class that fails to meet the numerosity requirement; (3) certifying a class where the class claims fail to meet the commonality and typicality requirements, and common issues do not predominate over individualized issues; (4) granting Letot's motion for class certification where Letot failed to establish that the benefits of class action outweigh

the detriments; (5) naming Letot as a class representative; and (6) certifying a class pursuant to rule of civil procedure 42(b)(2) did not move to certify a class based upon a claim for injunctive relief. We affirm the trial court's order.

In seeking class certification, Letot alleged the following facts: Letot had nearly completed her restoration of a 1983 Mercedes Benz 300SD when, on January 2, 2009, Evan Crosby collided with her. Crosby's vehicle was insured with USAA, and Letot filed a claim with USAA for the repair of her Mercedes. A USAA employee determined the value of Letot's Mercedes was $2728, but the repair estimate was $8859. Thus, USAA determined the Mercedes was a "total loss." When Letot learned of the $2728 valuation, which she believed to be well below the Mercedes' actual value, she notified USAA that she disagreed with the valuation and refused to accept USAA's offer of payment on her claim on January 20, 2009. Nevertheless, USAA tendered checks totaling $2738.02 to Letot. After receiving the checks, Letot's counsel returned the checks to USAA and demanded that USAA pay Letot $10,700 in damages.

On January 22, 2009, without Letot's knowledge or consent, USAA filed with the Texas Department of Transportation (TXDOT) an owner retained report. An owner retained report is used by insurers to notify TXDOT that it has paid a claim on a "nonrepairable or salvage motor vehicle" that the owner has retained. TXDOT then automatically marks "the motor vehicle record on this vehicle . . . accordingly in order to prevent further transfer of title of the motor vehicle until the owner has

applied for the appropriate ownership document." USAA stated on the owner retained report that "a claim was paid to" Letot on January 21, 2009 and indicated that TXDOT "should not recognize subsequent transfer of ownership until" a salvage vehicle title was issued for the Mercedes. USAA knew that filing the report would cause TXDOT to mark the motor vehicle record on the Mercedes as "salvage," preventing the sale or transfer of the vehicle until Letot requested a "salvage title" for the Mercedes. TXDOT stamped Letot's title "SURRENDERED" and rendered Letot's registration invalid such that she could not "register, operate, or permit operation of the vehicle on public roads." Letot was unaware of this filing and its consequences until TXDOT notified her of the vehicle's status on January 30, 2009. Letot immediately demanded that USAA inform TXDOT that the Mercedes was not salvage, but USAA took no action.

Discovery later revealed that the procedure USAA used to handle Letot's claim was routine at USAA. USAA's procedure was to file the owner retained reports immediately after it issued a check to a claimant, regardless of whether the claimant was given an opportunity to accept the check or whether the check was even mailed. Discovery also revealed that USAA files eighty to one hundred owner retained reports per week.

Letot sought to certify the following class:

> All persons or entities that filed claims under USAA automobile insurance policies, either as first-party or third-party claimants, after which USAA determined the claimant's vehicle to be a "total loss" and

filed an Owner Retained Report with the State of Texas stating that USAA made a claim payment to the claimant and such report was filed with the State by USAA or its agents within three days of USAA or its agents sending a check to such person allegedly attempting to pay such claim.

Letot argued that, under this definition, class members were presently ascertainable by reference to objective criteria, specifically records and data of USAA and the State of Texas; the class mechanism was limited to a specific transaction between USAA and certain automobile insurance claimants; and the criteria for class membership were not subjective and required no decision on the merits of the claims. Thus, Letot argued, the class definition met the standard for certification.

Letot argued further that the proposed class met the requirements of rule 42(a) of the rules of civil procedure. Specifically, she argued (1) the class was so numerous that joinder of all members was impracticable, (2) there were questions of law or fact common to the class, (3) the claims or defenses of the representative parties were typical of the claims or defenses of the class, and (4) the representative parties would fairly and adequately protect the interests of the class. Finally, Letot argued questions of law or fact common to the members of the class predominated over any questions affecting only individual members, and a class action was superior to other available methods for the fair and efficient adjudication of the controversy as required by rule of civil procedure 42(b)(3).

In making these arguments, Letot identified three issues which she argued were common to the class and predominated over questions affecting only individual

members: (1) whether USAA's common practice included filing Owner Retained Reports with TXDOT stating that a claim was paid to automobile insurance claimants before the claimants received and/or were given a chance to accept such payment and/or given knowledge of the effects of accepting such payment; (2) whether USAA filed the Owner Retained Reports identifying claimants' vehicles as salvage without notice to the claimants; and (3) whether this practice resulted in the surrender of claimants' vehicle titles and invalidation of their vehicle registrations. In an October 2020 supplement to her motion to certify class, Letot clarified that she only sought to certify the class with respect to her claim for conversion.

Following an October 14, 2020 hearing on Letot's motion to certify class, the trial court signed an order granting class certification. The order certified the class as requested by Letot and appointed Letot as the class representative. The order stated the matter was "being certified with respect to Plaintiff's claim for conversion claim [sic.] and its requested remedy of permanent injunctive relief." The order laid out the elements Letot had the burden of proving to establish her conversion claim and entitlement to injunctive relief and identified seven issues of fact and law common to the class. Whether "USAA's uniform practice of filing Owner Retained Reports prior to paying claims improperly meant it improperly and intentionally asserted rights in Letot's property" was the issue identified in the order as common among all class members. The order stated this issue was uniform in nature; requiring no proof from any particular class member; and, if determined in the

affirmative, dispositive of Letot's conversion claim. The order further provided that issues common to the class predominated over any individual issues, and a class action was therefore superior to other methods for the fair and efficient adjudication of the underlying controversy. This appeal followed.

## Applicable Law

We review a trial court's order on class certification for an abuse of discretion. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002). A trial court abuses its discretion when it: (1) acts arbitrarily or unreasonably; (2) fails to properly apply the law to the undisputed facts; or (3) rules on factual assertions not supported by the record. *Vincent v. Bank of America, N.A.*, 109 S.W.3d 856, 864 (Tex. App.—Dallas 2003, pet. denied).

In reviewing a class certification, the initial inquiry focuses on the parameters of the proposed class. *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 (Tex. 2000). A properly defined class is essential to the maintenance of a class action. *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 453 (Tex. 2000). It is the class definition that determines who is entitled to notice, the nature of the relief to be awarded and who is entitled to that relief, and who is bound by the judgment if they lose. *Beeson*, 22 S.W.3d at 403. To be a sufficient class definition, class members must be presently ascertainable by reference to objective criteria. *Id.*

Rule 42(a) prescribes the following prerequisites for a class action:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law, or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 42(b)(4) provides that:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

* * *

(4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In its first issue, USAA argues the trial court abused its discretion in certifying a class that is objectively unascertainable, overly broad, and includes members who lack standing to sue. In making this argument, USAA challenges the appropriateness of the class definition.

USAA first argues the class is overly broad because it includes persons for whom USAA paid claims on "salvage motor vehicles" who lack standing to sue. Absent proof that a person or entity rejected payment on their "salvage" vehicle, USAA argues, the proposed class "does not identify individuals who would be

affected by a judgment," it identifies individuals for which USAA complied with a statutory requirement. USAA argues the "overwhelming majority" of such individuals suffer no injury when USAA advises TXDOT of their actual salvage vehicle as required by state law. USAA argues it manually reviewed more than 500 claim files in which an "owner retained report" may have been sent, and no person or entity from January 2014 to November 2019 disputed whether their vehicle constituted a total loss or rejected the total loss payment made to them by USAA. Thus, USAA argues, there is no person or entity in that nearly six-year period that would have standing to sue USAA under the class definition.

While owner retained reports may have been sent regarding actual salvage vehicles and no persons may have disputed the total loss determination or rejected the total loss payment, this does not render the class definition overly broad or result in there being no person with standing to sue USAA. The class was certified only with respect to Letot's conversion claim and included only persons who filed a claim under a USAA policy and had USAA, within three days of sending a check, file an owner retained report stating that USAA "made a claim payment" to the person. Thus, it is USAA's policy of stating in an owner retained report that payment was made within three days of sending a check that is at issue, not whether a vehicle was an actual salvage vehicle or whether a person disputed USAA's total loss determination or rejected the total loss payment.

USAA argues that, to avoid the standing issue, the class definition asks the court to assume that class members did not accept payment if an "owner retained report" was sent within three days of the date USAA sent a check to the class member. USAA argues that assumption does not comport with Texas law, which has long held that, when a check is accepted as payment and the check is paid in due course, payment relates back to the date of delivery of the check. Therefore, USAA argues, the three-day window set out in the class definition is arbitrary and provides no basis from which one could conclude whether payment has or has not been made.

To the extent USAA argues the three-day period is arbitrary, we note that USAA itself set its policy of filing owner retained reports within three days of authorizing a check. Brian Letronico, a USAA employee who had worked in USAA's total loss department, testified the general practice of USAA is to submit owner retained reports within three days of authorizing the check. Further, the class definition does not ask the court to assume the recipient of such a check did not accept payment. Again, the focus is on the brief period between authorizing a check and sending the owner retained report, not on whether or not payment was ultimately refused.

USAA further argues class membership is not presently ascertainable because each class member must establish that their specific vehicle was not a "salvage motor vehicle" at the time USAA filed an "owner retained report" with TXDOT. Thus, the class definition is fatally flawed because membership in the class requires resolution

of a legal issue before membership can be ascertained. Moreover, USAA argues the class definition is fatally flawed because there is no evidence class membership can be ascertained from USAA's records or any other source.

As we have explained, the focus is not on determining whether a vehicle was an actual salvage vehicle but rather on the timing of USAA filing an owner retained report. As to whether class members can be ascertained from USAA's record or any other source, Latronico testified there were more than five hundred owner retained reports in Texas that were filed within three days of USAA authorizing the check. At trial, Letot entered into evidence, without objection, nearly 2000 owner retained reports filed by "USAA" showing a date of filing three days or less from the "Date of Claim Payment." Thus, the record shows that class members are clearly ascertainable. Having concluded the arguments raised in USAA's first issue are without merit, we overrule USAA's first issue.

In its second issue, USAA argues the certified class fails to meet the numerosity requirement of rule of civil procedure 42. In arguing that "Letot's class is a class of one," USAA again argues that a review of 500 claims "confirmed that no person or entity from 2014 to November 2019 disputed whether their vehicle constituted a total loss" or rejected the total loss payment USAA made to them.

Numerosity is not based on numbers alone; rather, the test is whether joinder of all members is practicable in view of the size of the class and includes such factors as judicial economy, the nature of the action, geographical location of class

members, and the likelihood that class members would be unable to prosecute individual lawsuits. *Rainbow Group, Ltd. v. Johnson*, 990 S.W.2d 351, 357 (Tex. App.—Austin 1999, pet dism'd w.o.j.).

Again, USAA incorrectly focuses on the number of class members who disputed the total loss determination or rejected the total loss payment. Considering the class that was certified - persons who had USAA, within three days of sending a check, file an owner retained report stating that USAA "made a claim payment" to them - it appears the numerosity requirement is met. *See id.* Letronico testified it was "correct" that there are "hundreds or maybe thousands of people similar to Ms. Letot here in Texas." In fact, Letot entered into evidence nearly 2000 owner retained reports that showed a period of three days or less between the date of the report and the "Date of Claim Payment." We overrule USAA's second issue.

In its third issue, USAA argues the class does not satisfy the commonality or typicality requirements of rule 42(a), and common issues do not predominate as required by rule 42(b)(3).

Regarding commonality and typicality, USAA asserts that USAACIC, not USAA, insured the driver with whom Letot had an accident, adjusted Letot's claim, and filed the TXDot report about which Letot complains. Accordingly, USAA argues, the class includes vehicle owners with claims against one or more insurers against whom Letot herself has no cause of action, and commonality and typicality cannot exist under these circumstances.

Commonality requires that there are questions of law or fact common to the class, and typicality requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. TEX. R. CIV. P. 42(a); *S.W. Bell Tel. Co. v. Mktg. on Hold, Inc.*, 308 S.W.3d 909, 919 (Tex. 2010).

In arguing that "USAACIC" is the is the proper party against which Letot should bring her conversion claim, USAA cites only to the owner retained report filed in connection with Letot's vehicle. The report lists "USAA Insurance Shared Services" as the "Name of Insurance Company Submitting Owner Retained Report," and the report is signed "USAA BY IRMA LEE." The record contains Irma Lee's deposition testimony that "USAA Insurance Shared Services" is a "department" of USAA in general" and not USAACIC. Lee testified she had "heard of" USAACIC. Throughout this case and a prior appeal to this Court, "USAA" has been the named defendant. *See Letot v. United Servs. Auto. Ass'n*, No. 05-14-01394-CV, 2017 WL 1536501 (Tex. App.—Dallas April 27, 2017, pet. denied) (mem op.). Under these circumstances, we cannot conclude USAA's assertions concerning USAACIC prevent the class from satisfying the commonality and typicality requirements. On the contrary, it appears that Letot's claims are the same as the others in the class: an owner retained report was filed in connection with their vehicle within three days or less of USAA authorizing payment, thus satisfying the commonality and typicality requirements. *See* TEX. R. CIV. P. 42(a); *S.W. Bell*, 308 S.W.3d at 919.

–12–

As to the issue of whether common issues predominate, USAA argues that individualized issues, not common ones, predominate because whether any particular class member rejected payment or whether any specific vehicle is or is not a "salvage" vehicle are issues dependent on individualized facts. Further, USAA argues common issues do not predominate because there can be no uniform damage model for the class; proof of damages will require an individualized assessment of the value of each vehicle at issue. Thus, USAA argues, Letot cannot satisfy the requirements of rule 42(b)(3).

In addition to meeting the requirements of rule 42(a), a class action must also satisfy at least one of the requirements in rule 42(b). Rule 42(b)(3) provides an action may be maintained as a class action if the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. TEX. R. CIV. P. 42(b)(3). Rule 42 contains a list of non-exhaustive factors to aid a court in determining if (b)(3) certification is appropriate: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *Id.*; *S.W. Bell*, 308 S.W.3d at 919.

In arguing that common questions do not predominate in this case, USAA renews its arguments concerning the need to establish whether or not each class member's vehicle was an actual salvage vehicle and whether each class member rejected payment. As we have said, those questions are not at issue. To the extent USAA argues there can be no uniform damage model for the class, the fact that damages must be computed separately for each class member does not necessarily mean in itself that individual issues predominate over common issues of law and fact. *Citgo Ref. & Mktg., Inc. v. Garza*, 187 S.W.3d 45, 71 (Tex. App.—Corpus Christi-Edinburg 2005, pet. dism'd), on reh'g (Mar. 23, 2006) (citing *Sun Coast Res., Inc. v. Cooper*, 967 S.W.2d 525, 534 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd w.o.j.) (fact that damages must be computed separately for each class member will not prevent class certification)). Here, as the trial court stated in its order:

> the issue that will be the object of most of the efforts of the litigation and the Court is whether USAA's uniform practice of filing Owner Retained Reports prior to paying claims improperly meant it improperly and intentionally asserted rights in Letot's property.

We conclude the trial court did not abuse its discretion in determining that common questions predominate in this case. *See S.W. Bell*, 308 S.W.3d at 919; *Stromboe*, 102 S.W.3d at 691. We overrule USAA's third issue.

In its fourth issue, USAA argues Letot failed to establish that the benefits of class action outweigh the detriments. In making this argument, USAA asserts Letot did not establish that a class action is the superior means by which to address the

conversion claims at issue. USAA argues the individualized nature of the conversion claims at issue means that discovery already performed with respect to Letot's claim, as well as any decision the fact finder reaches regarding Letot's claim, will not apply to any class member's claim for conversion. USAA complains the underlying trial plan does not address how the fact finder will determine that USAA converted any class member's property right, and that determination can only be made by undertaking individualized trials for each class member's conversion claim. Absent a trial plan that demonstrates the class claim for conversion can be tried in a "manageable, time efficient manner," USAA argues, the trial court abused its discretion in certifying Letot's claim for class action.

In this issue, USAA once again focuses on the need for an individualized inquiry into whether each class member's vehicle was or was not a salvage vehicle. As we have noted, the trial court's order focused on the "issue that will be the object of most of the efforts of the litigation and the Court": whether "USAA's uniform practice of filing Owner Retained Reports prior to paying claims" meant it improperly and intentionally asserted rights in Letot's property. No inquiry into whether class members' vehicles were salvage vehicles is required. Because USAA's complaints about the trial plan are interwoven with its argument that a salvage vehicle determination is required, we conclude those complaints lack merit. We overrule USAA's fourth issue.

In its fifth issue, USAA argues Letot is not an adequate class representative as required by rule 42(a)(4). Specifically, USAA complains Letot spoliated the primary evidence by intentionally destroying her vehicle, and she has not suffered an injury identical to the injuries suffered by the class.

In determining the adequacy requirement, the trial court must inquire into the zeal and competence of class counsel and into the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of the absentees. *Johnson*, 990 S.W.2d at 357. The primary issue to be considered is whether conflict or antagonism exists between the interests of the representatives and those of the remainder of the class. *Id.* However, only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. *Id.*

USAA once again argues the issue of "salvage motor vehicles" is relevant in this case and argues Letot is not an adequate class representative because she destroyed her vehicle before it could be inspected in this lawsuit. As we have repeatedly stated, the "salvage" status of the class members' vehicles is not at issue. Moreover, the trial court had before it Letot's testimony that:

> Basically, USAA had sent an adjustor out who spent a couple of hours with me, looking at the vehicle. And for twenty-two months from that time, from the time he spent making his assessment, I was told by USAA they didn't want to see it. They didn't care. They weren't going to do anything. They weren't going to pay any more. They -- the dispute about the value was "tough." I wasn't -- they were not going to move.

–16–

Thus, the record shows Letot maintained the automobile for twenty-two months in the face of USAA's refusal to take any action on her claims regarding the vehicle and their representations that they did not want to see it. Letot further testified she and other Benz enthusiasts took the vehicle apart because it was a vehicle she had restored and she was having to continue to pay storage on it. In addition, the record shows Letot has prosecuted this case against USAA since 2009 and through one previous appeal to this Court. Under these circumstances, we cannot conclude the trial court abused its discretion in determining that Letot is an adequate class representative. *See Stromboe*, 102 S.W.3d at 691. We overrule USAA's fifth issue.

In its sixth issue, USAA argues the trial court abused its discretion in certifying a class pursuant to rule of civil procedure 42(b)(2) when Letot did not move to certify a class based upon a claim for injunctive relief, did not assert a claim for injunctive relief in her petition until more than a week after the hearing on the motion for class certification, and does not seek injunctive relief relevant to the certified class. USAA argues the trial court failed to conduct an adequate hearing on Letot's claim for injunctive relief, and her request for injunctive relief did not predominate over the requested relief for damages and would not resolve any class issue before the court.

Here, at the hearing on class certification, Letot's counsel made the following argument:

Now, in addition to 42(a), you have to satisfy at least one element of 42(b). And there are three actual elements of 42(b), and we've satisfied both. First, 42(b)(2). 42(b)(2), and I'll highlight it here, is that in addition to showing the four elements I just talked about, you show that the defendant has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief with respect to the class appropriate. So we're moving, as well, here for a 42(b)(2) class, an injunctive relief class. We're going to ask you to enjoin USAA from filing Owner Retained Reports before they have proof or evidence that people have cashed those checks. That's the problem in this case. And they won't stop doing it because they don't think they have to do it and we would ask you to enjoin them. That alone justifies a certified class case with respect to the injunctive relief.

In response, USAA's counsel stated that, for the first time, Letot "raised (b)(2)" and noted "that's not in their motion to certify, so that would not be an appropriate basis -- the (b)(2) basis would not be an appropriate basis on which to certify the class." Neither during the hearing nor at any time prior to the trial court certifying the class did USAA move for a continuance.

After the hearing but before the trial court certified the class, Letot filed her seventh amended petition adding a claim for injunctive relief pursuant to rule 42(b)(2). In bringing this claim, Letot argued she learned for the first time at the class certification hearing that "USAA continues to make it USAA's standard operating procedure to file Owner Retained Reports at the same time it processes payment to claimants." The trial court thereafter certified the class under rule 42(b)(2) and (b)(3).

In support of its argument that the trial court did not conduct an adequate hearing, USAA relies on three cases: *Mahoney v. Cupp*, 638 S.W.2d 257, 260 (Tex.

–18–

App.—Waco 1982, no writ); *In the Interest of M.M.O.*, 981 S.W.2d 72, 85–87 (Tex. App.—San Antonio 1998, no pet.); and *St. Louis S.W. Ry. Co. v. Voluntary Purchasing Groups, Inc.*, 929 S.W.2d 25, 31 (Tex. App.—Texarkana 1996, no writ). In *Mahoney*, the court determined that the class certification was simply determined following a hearing:

> The express purpose of the hearing on February 3, 1982, was a decision and order on this very question, permitting or not permitting the suit to be a class action. Appellant and appellees and their attorneys were present. The record at this hearing does not show that appellant was denied the opportunity to present evidence on the class action issue; rather, it shows that he chose not to present evidence. This hearing led to the order complained against. Under the circumstances, we hold the order was not based upon a hearing held without notice to appellant.

*Mahoney*, 638 S.W.2d at 261. As in *Mahoney*, USAA attended the certification hearing and was not denied the opportunity to present evidence, nor did it seek a continuance. The hearing led to the order complained against. *See id. In the Interest of M.M.O.* is a case in which a class was initially certified following a hearing. The court determined that, "Because the live pleading at the first certification hearing sought different relief against different defendants, the record of that hearing could not satisfy the class representatives' burden [at a second certification hearing] of establishing that certification of a declaratory judgment action against the appellants was proper." *In the Interest of M.M.O.*, 981 S.W.2d at 86. Clearly, this case does not involve a second certification hearing involving "different relief against different defendants." Finally, in *St. Louis S.W. Ry. Co.*, the trial court failed to conduct a class certification hearing at all.

Thus, none of USAA's cited authorities support its arguments under this issue or demonstrate that the trial court abused its discretion in certifying the class under rule 42(b)(2). *See Stromboe*, 102 S.W.3d at 691. To the extent USAA argues a "rigorous analysis of the 'cohesiveness' of the claims for injunctive relief" is required, we note that such an analysis is not required where, as here, the trial court's certification order provides for notice to the unnamed members of the class and the opportunity to opt-out. *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 671 (Tex. 2004). We overrule USAA's sixth issue.

We affirm the trial court's order granting class certification.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

201019F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

USAA CASUALTY INSURANCE
COMPANY, Appellant

No. 05-20-01019-CV     V.

SUNNY LETOT, INDIVIDUALLY
AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,
Appellee

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-13-00156-
E.
Opinion delivered by Chief Justice
Burns. Justices Partida-Kipness and
Carlyle participating.

In accordance with this Court's opinion of this date, the trial court's order granting class certification is **AFFIRMED**.

It is **ORDERED** that appellee SUNNY LETOT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED recover her costs of this appeal from appellant USAA CASUALTY INSURANCE COMPANY.

Judgment entered this 10th day of February 2022.