# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00119-CV

**American Campus Communities, Inc.; American Campus (PVAMU) Ltd.; American Campus (PVAMU IV) Ltd.; ACC OP (PVAMU VI), LLC; ACC OP (PVAMU VII), LLC; ACC OP (PVAMU VIII), LLC; American Campus (Laredo), Ltd.; American Campus (U of H), Ltd.; ACC OP (West Abram), LLC; ACC OP (The Block), LLC; 22 1/2 Street Partners, L.P.; Campus Investors Austin, LLC; Campus Investors Austin, LLC; ACC OP (Pearl Street), LLC; ACC OP (Retreat Sm), LLC; ACC OP (Retreat Sm Land), LLC; ACC OP (Sanctuary Lofts), LLC; ACC OP (Vistas San Marcos), LLC; ACC (Outpost San Marcos), L.P.; Campus Investors Hrse-SC, LLC; American Campus Communities Operating Partnership, L.P.; ACC (Outpost San Antonio), L.P.; ACC OP (West Campus), LLC; ACC OP (Uta Blvd.), LLC; ACC OP (26 West), LLC; GMH/GF Denton Associates, LLC; ACC OP (Cityparc), L.P.; Apkshv Lubbock, L.P.; ACC (Raiders Pass), L.P.; Lubbock Two Associates, LLC; Lubbock Main Street Associates, LLC; ACC OP (Overton Park), LLC; ACC OP (Tract 6), LLC; Sycamore Avenue Associates, LLC; ACC OP (Tracts 32 and 33), LLC; ACC OP (Denton-Fry), LLC; SHP-The Callaway House, L.P.; ACC OP (Callaway Villas), L.P.; ACC (Aggie Station), L.P.; ACC OP (Marion Pugh), LLC; ACC OP (South College Avenue), LLC; Campus Investors Baylor, LLC; & ACC OP (Speight Avenue), LLC, Appellants**

**v.**

**Beth Berry, Brooke Berry, Yael Spirer, and Hailey Hoppenstein, Individually and on behalf of all others similarly situated, Appellees**

---

**FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY NO. D-1-GN-18-005960, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING**

---

## MEMORANDUM OPINION

Appellants are American Campus Communities, Inc. and more than thirty of its subsidiaries (collectively, ACC), all of which are landlords at separate residential properties

throughout Texas. Appellees are ACC's former tenants[1] (Tenants) who filed a class action alleging that ACC violated the Texas Property Code and was strictly liable to them for civil penalties. The trial court granted Tenants' motion to certify the class action, and ACC filed this interlocutory appeal of the trial court's certification order. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(3). For the following reasons, we will modify the certification order and affirm it, as modified.

## BACKGROUND

Tenants filed an "Original Petition and Class Action Petition" in October 2018 alleging that ACC had violated Section 92.056(g) of the Property Code by not including statutorily required language in its uniform lease agreements with Tenants (who were generally college students)[2] and that Tenants were entitled to statutory remedies for such omissions. *See* Tex. Prop. Code §§ 92.056(g) ("A lease must contain language in underlined or bold print that informs the tenant of the remedies [relating to a landlord's duty to repair or remedy conditions that materially affect the physical health or safety of an ordinary tenant] available under this section and Section 92.0561."), .0563 ("Tenant's Judicial Remedies"). Tenants alleged that all defendants except American Campus Communities, Inc. are subsidiaries of that corporation and operate under an "umbrella" of corporate control by that entity or American Campus Communities Operating Partnership, L.P.

---

[1] Unlike the other three appellees, Beth Berry was not a tenant of ACC but signed as a guarantor on an ACC lease for her daughter, Brooke Berry. The trial court appointed Brooke Berry, Yael Spirer, and Hailey Hoppenstein as class representatives. For convenience, we refer to all four appellees as Tenants and to class representative Brooke Berry as Berry.

[2] In their live (third amended) petition, Tenants alleged that ACC was engaging in "ongoing statutory violations" affecting "residential tenancies of thousands of young, often first-time renters—college students."

2

In June 2020, Tenants filed a motion for class certification. *See* Tex. R. Civ. P. 42. ACC filed a response in opposition followed by a motion for summary judgment. The trial court heard argument on ACC's motion for summary judgment on September 22, 2020, and conducted an evidentiary hearing on Tenants' motion for certification on October 1, 2020.

On November 4, 2020, Tenants filed their live (third amended) petition in which they asserted two "counts" for themselves individually and the following putative class: "All Texas tenants under an ACC residential lease that was executed, entered into, continued, renewed, or extended during the class period."[3] In their first count—"Breach of Statutory Duty to Disclose"—Tenants alleged that ACC

> violated Section 92.056(g) of the Texas Property Code with respect to the subject lease agreements used during the proposed class period since same did not contain required notice language in underlined or bold print (or any language whatsoever) that informed tenants of the remedies available under Section 92.056 and Section 92.0561 of the Texas Property Code.

*See* Tex. Prop. Code § 92.056(g). Tenants sought statutory remedies of a "civil penalty of one month's rent plus $500 . . . as to each member of the defined class" plus court costs and attorney's fees. *See id.* § 92.0563(a)(3), (5).

In their second count—"Breach of Statutory Anti-Waiver Prohibition"—Tenants alleged that ACC's "refusal to include the mandated language [in Section 92.056(g)] constitutes an attempt to constructively inhibit, restrict or waive its landlord duties and corresponding tenant rights and remedies in violation of" Section 92.006 and that ACC acted "knowingly" in omitting

---

[3] Tenants proposed two alternate "class periods": (1) the period encompassing "tenancies created after September 1, 2008, through ACC's attempted lease modification in April 2018" or (2) the period encompassing "all existing tenancies during the four years prior to ACC's lease modification in 2018."

the language, entitling each class member to "a civil penalty of one month's rent plus $2,000." *See id.* §§ 92.006, .0563(b).

In a section of their live petition entitled "Equitable Relief," Tenants additionally alleged that ACC "continue[s] to violate Texas law" for which they "seek the declarations and injunctive relief outlined in Section 6 of this Third Amended Petition," including a declaration of "the legal deficiency" of ACC's "2018 Lease Addendum" and "current leasing agreements."[4] *See* Tex. Civ. Prac. & Rem. Code § 37.004(a) (providing for declaratory relief to person "interested under a . . . written contract"). Tenants also asked the court to issue a permanent injunction (1) prohibiting ACC from "using, employing, relying on, or seeking any relief based on the 2018 Lease Addendum," (2) "mandating that [ACC] provide the statutorily required notice in proper print and us[e] full and complete language in compliance with Sections 92.006 and 92.056(g)," and (3) enjoining ACC from "utilizing legal defenses otherwise available to a residential landlord regarding . . . repair reporting and timing of repair completion for tenancies existing during the class period."

The trial court signed an order denying ACC's summary-judgment motion on November 25, 2020, and an order granting class certification on February 26, 2021. The trial court's certification order certified the following class: "All Texas tenants residing under an American Campus Communities residential lease that was executed, entered into, continued,

---

[4] Tenants alleged that their "litigation efforts [served] as a catalyst for ACC's delayed attempted compliance [via a lease addendum that ACC sent to its then-current tenants on March 21, 2018] with Section 92.056(g)'s notice requirements." Tenants explain that they originally filed their class action in February 2018 in Dallas County District Court but later nonsuited it without prejudice "due to venue challenges." They allege that between their filing of the Dallas County lawsuit and their filing of the subject lawsuit, ACC made changes to its leasing contracts, including use of the 2018 addendum purporting to contain the language mandated by Section 92.056(g).

4

renewed, or extended between October 1, 2014 and March 21, 2018 at a property where one

of the Defendants was the owner or landlord." The order certified the following claims:

(1) "Breach of Statutory Duty to Disclose under Texas Property Code Section 92.056(g)" and

(2) "Breach of Statutory Anti-Waiver Provision under Texas Property Code Section 92.006."

The court also granted certification "pursuant to Rule 42(b)(2)," *see* Tex. R. Civ. P. 42(b)(2),

because it is "appropriate to address claims seeking declarations" of the "legal sufficiency of

ACC's 2018 Lease Addendum" and "current leasing agreements" and to "determine the

propriety of retrospective and prospective injunctive relief enjoining [ACC] from utilizing legal

defenses . . . [related to] repair reporting and timing of repair completion for tenancies existing

during the class period."

Among the trial court's findings in the order are the following:

- Brooke Berry, Yael Sprier, and Hailey Hoppenstein will fairly represent the interests of the class.

- The claims of Brooke Berry, Yael Sprier, and Hailey Hoppenstein are typical of the claims of the class. The claims all arise from questions of law and/or fact common and typical to the Class considering the substantial uniformity of the lease agreements and the express requirements of the Texas Property Code uniformly applying to same. The Plaintiffs seek recovery as assigned by the same statutory provisions under the same civil remedy model dependent upon application of the same legal theory as the class members. There is a nexus between the grievance suffered by these Plaintiffs and that suffered by the other members of the class sufficient to meet the requirement of typicality under Rule 42(a).

- There are significant common issues of liability and damages [including] . . . Defendants' knowledge of the legislated requirements of residential leasing agreements; . . . whether the subject provisions of the Texas Property Code create legal duties for which a breach qualifies for a remedy; . . . whether proof of a violation of Texas Property Code § 92.056(b) is a condition precedent to entitlement of the judicial remedies of Section 92.0563(a); . . . [and] whether Texas Property Code § 92.006 supports an independent claim for judicial remedies if the burden of proof for Section 92.0563(b) is carried[.]

5

- The questions of law and fact common to the class predominate over any questions (including defenses) affecting only individual members, and a class action proceeding is superior to all other available methods for the fair and efficient adjudication of these claims and controversy. The class here will prevail, or fail, in unison on the basis of the common proof and the ultimate legal conclusions.

## DISCUSSION

Appellate courts review a class-certification order for abuse of discretion. *Bowden v. Phillips Petrol. Co.*, 247 S.W.3d 690, 696 (Tex. 2008); *Compaq Comput. Corp. v. Lapray*, 135 S.W.3d 657, 671 (Tex. 2004). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Bowden*, 247 S.W.3d at 696. A trial court has no discretion in determining what the law is or in applying the law to the facts, and a clear failure by the court to correctly analyze or apply the law will constitute an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

All class actions must satisfy four threshold requirements under Texas Rule of Civil Procedure 42(a): (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000) (quoting Tex. R. Civ. P. 42(a)). Additionally, class actions must satisfy at least one of the three subdivisions in Rule 42(b). *See* Tex. R. Civ. P. 42(b). "Actual conformance with Rule 42 is indispensable, and compliance with the rule must be demonstrated, not presumed." *Stonebridge Life Ins. v. Pitts*, 236 S.W.3d 201, 205 (Tex. 2007).

6

ACC contends that the trial court abused its discretion in certifying the class by finding that (1) common issues predominate over those affecting only individual class members, *see* Tex. R. Civ. P. 42(b)(3); and (2) the class representatives satisfied the typicality and adequacy requirements, *see id.* R. 42(a)(3), (4).  In a third issue, ACC contends that the trial court erred in certifying the class for declaratory and injunctive relief.  *See id.* R. 42(b)(2).

### *Predominance*

Subsection (b)(3) of Rule 42 requires (1) common questions of law or fact to predominate over questions affecting only individual members and (2) class treatment to be "superior to other available methods for the fair and efficient adjudication of the controversy." Tex. R. Civ. P. 42(b)(3); *Bernal*, 22 S.W.3d at 432.  Only subpart (1) is at issue here.  "Courts determine whether common issues predominate by identifying the substantive issues of the case that will control the outcome of the litigation, assessing which issues will predominate, and determining if the predominating issues are, in fact, those common to the class."  *Bernal*, 22 S.W.3d at 433–34; *see id.* (noting that predominance requirement is "one of the most stringent prerequisites to certification" and is "far more demanding than the commonality requirement" (citations omitted)).  "The test for predominance is not whether common issues outnumber uncommon issues but . . . whether common or individual issues will be the object of most of the efforts of the litigants and the court."  *Id.* at 434 (citation omitted).

We begin by examining the Property Code provisions under which Tenants have sued ACC and for which they seek redress.  Tenants first complain about ACC's alleged violation of subsection (g) of Section 92.056.  *See* Tex. Prop. Code § 92.056 ("Landlord Liability and Tenant Remedies; Notice and Time for Repair").  Subsection (g) provides, "A lease must

7

contain language in underlined or bold print that informs the tenant of the remedies available under this section and Section 92.0561." *Id.* § 92.056(g). Tenants contend that because the subject leases did not contain the language required by Section 92.056(g), ACC is strictly liable to them for statutory damages as provided in Section 92.0563: "A tenant's judicial remedies under Section 92.056 shall include . . . a judgment against the landlord for a civil penalty of one month's rent plus $500." *See id.* § 92.0563.

Tenants' second complaint is that ACC's alleged violation of Section 92.056(g) additionally constitutes a violation of Section 92.006(c), which provides, "A landlord's duties and the tenant's remedies under Subchapter B, which covers conditions materially affecting the physical health or safety of the ordinary tenant, may not be waived except as provided in Subsections (d), (e), and (f) of this section." *See id.* § 92.006(c). Tenants assert that ACC's alleged failure to include the Section 92.056(g) required language in the subject leases "constitutes an attempt to constructively inhibit, restrict or waive its landlord duties and corresponding tenant rights and remedies in violation of" Section 92.006(c) and that they are entitled to statutory damages under Section 92.0563(b) for ACC's "knowing" violation. *See id.* § 92.0563(b) (providing tenant remedies when landlord "knowingly violates Section 92.006").

While ACC has conceded that the subject leases did not contain the Section 92.056(g) language,[5] it contends—as it did in its summary-judgment motion—that Tenants cannot meet the predominance requirement because "as a matter of law" neither Section 92.056(g) nor 92.006(c) "allow[s] for strict liability" or a private right of action via Section 92.0563's judicial remedies. Instead, ACC continues, the judicial remedies provided in Section

---

[5] The trial court's certification order noted such concession: "The [Defendants'] Joint Motion for Summary Judgment and Reply briefing conceded the contractual lease language relevant to the [Tenants'] claims was universally absent . . . ."

92.0563 apply only when a landlord has violated subsection (b) of Section 92.056, and proof of such violation would necessarily entail individual proof by every tenant of facts such as the tenant's notification to their landlord of a condition requiring repair, the tenant's being current on rent, and the landlord's failure to make diligent efforts to repair the condition. *See id.* § 92.056(b). ACC contends that because Tenants may obtain the judicial remedies outlined in Section 92.0563 only if they prove the elements in Section 92.056(b), the predominating issues at trial will be uncommon and highly individualized, turning on whether, when, and how each tenant made a repair request and how their landlord responded—requiring a "mini-trial" for each putative class member. Similarly, ACC asserts, Tenants' claims for breach of the waiver prohibition cannot proceed because the remedy provided in Section 92.0563(b) for violation of Section 92.006(c) is "triggered" only if a landlord has a duty to make repairs, with that duty itself triggered by a tenant's proving, as discussed above, the elements in Section 92.056(b). *See id.* §§ 92.006(c), 92.0563(b); *see also Philadelphia Indem. Ins. v. White*, 490 S.W.3d 468, 485 (Tex. 2016) ("[A] landlord's liability and a tenant's repair remedies are conditioned on the existence of a duty under section 92.052.").

Tenants rejoin that ACC is improperly attempting to argue the merits of their statutory claims via interlocutory appeal and that because the trial court already rejected ACC's merits arguments when it denied ACC's motion for summary judgment, ACC must await a final judgment to seek appellate review of these substantive issues. Essentially, Tenants assert, ACC is improperly attempting to obtain interlocutory review of the trial court's summary-judgment order by framing their appellate complaint as a challenge to the predominance requirement. We agree with Tenants.

While Tenants' live petition contains allegations of repair requests that Berry, Spirer, and Hoppenstein filed with their respective landlords regarding problems such as "excessive water intrusion" into their living units, those allegations pertain to those plaintiffs' individual claims in their third count (which is not at issue in this appeal) for breach of the statutory duty to repair and resulting personal-property damages. The trial court did not (and was not asked to) certify that claim on behalf of the class. Instead, the trial court certified two straightforward strict-liability claims that—as the trial court correctly observed in its certification order—will "prevail, or fail, in unison on the basis of the common proof and the ultimate legal conclusions," such as (1) whether a landlord is strictly liable to its tenants for mere failure to include in its lease the language mandated by Section 92.056(g), (2) whether omitting the required language also constitutes a violation of the anti-waiver provision in Section 92.006(c), (3) whether ACC had knowledge of the "legislated requirements" of residential leases in using its uniform leases, and (4) what scope of control American Campus Communities, Inc. exercised over its subsidiaries. The first two of these are legal determinations that the trial court has, at least at this juncture, determined adversely to ACC, and we cannot review that determination in this interlocutory posture. The second two are factual questions that can be resolved based on common proof rather than on individualized proof that could vary from tenant to tenant. Furthermore, should the common liability questions be determined in Tenants' favor, damages will be easily ascertainable by applying the simple statutory formula to ACC's admittedly readily available records. *See Life Partners, Inc. v. McDermott*, No. 05-12-01623-CV, 2014 WL 2810472, at *10 (Tex. App.—Dallas June 23, 2014, no pet.) (mem. op.) (noting, in context of challenge to numerosity requirement, that trial court "found the primary liability question is the same for all class members, and individual damage calculations can be performed easily with basic math").

10

On this record, the trial court could reasonably have concluded that common issues of law and fact would predominate over questions affecting only individual class members. Accordingly, the trial court did not abuse its discretion in finding that Tenants have met the predominance requirement, and we overrule ACC's first issue.

*Typicality and adequacy*

In its second issue, ACC argues that the three class representatives failed to meet the "intertwined typicality and adequacy-of-representation" requirements. *See* Tex. R. Civ. P. 42(a)(3), (4). As to Hoppenstein and Spirer, ACC contends that the two plaintiffs are "inadequate class representatives because their claims are barred on limitations grounds, and the limitations defense renders their claims atypical of those asserted by the class." In briefing this issue, ACC explains that its real challenge to Hoppenstein and Spirer is the trial court's class definition, which—by use of the word "continued"[6]—includes tenants who executed leases, extensions, or renewals *before* October 1, 2014, but did not execute any such agreements *during* the class period. In other words, ACC complains that the class definition includes Hoppenstein, Spirer,[7] and potentially others whose leases were merely in force during the class period but were not executed, extended, or renewed during the class period. Thus, ACC's argument concludes, those tenants' claims accrued before October 1, 2014, and are barred by the statute of limitations.

---

[6] The class definition reads: "All Texas tenants residing under an American Campus Communities residential lease *that was* executed, entered into, *continued*, renewed, or extended between October 1, 2014 and March 21, 2018 . . . ." (Emphasis added.)

[7] We address ACC's argument as to Hoppenstein only and not as to Spirer because one of the certification order's findings—which ACC does not challenge—recites that Spirer's renewal addendum for a lease at one of the properties "explicitly stated" that "the Date of this Renewal and Amendment of Lease Agreement" was August 2015. Therefore, the record does not support ACC's limitations argument as to Spirer, and we accordingly do not include her in our discussion of ACC's second issue.

11

*See Loewe v. Commons at Willowbrook, Inc.*, No. 14-07-00265-CV, 2008 WL 5220295, at *3–4 (Tex. App.—Houston [14th Dist.] Dec. 11, 2008, no pet.) (mem. op.) (holding that causes of action for fraud and violations of Texas Real Estate License Act accrued on date plaintiff signed lease); *see also* Tex. Civ. Prac. & Rem. Code §§ 16.004 (four-year limitations period for contract claims), .051 (residual four-year limitations period).

Tenants respond that whether certain class members' claims are barred by statutes of limitations under the circumstances here is a purely legal question and that Hoppenstein's claim being possibly barred by limitations is an issue she has in common with other as-yet-undetermined class members in the same circumstances, obviating any assertion that Hoppenstein is not a "typical" or "adequate" class representative. We agree with Tenants.

Firstly, "[t]he existence of a defense against a named party that may not exist against the rest of the class does not necessarily destroy typicality." *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 363 (Tex. App.—Dallas 2004, pet. denied) (citing *Citizens Ins. Co. of Am. v. Hakim Daccach*, 105 S.W.3d 712, 726 (Tex. App.—Austin 2003), *rev'd on other grounds*, 217 S.W.3d 430 (Tex. 2007)); *City of Dallas v. Brewster*, No. 05-00-00335-CV, 2000 WL 1716508, at *6 (Tex. App.—Dallas Nov. 17, 2000, no pet.) (not designated for publication) (refusing to address validity of defendant's limitations defense in reviewing certification order and noting that existence of affirmative defense that may potentially affect only some class members will not prevent finding of "typicality" or "commonality").

Secondly, when a limitations defense does not involve disputed facts but merely the application of law to established facts, it is unlikely to become the focus of the litigation, and an appellate court generally will not conclude that a trial court abused its discretion in determining that the named party's claims are typical of the class. *See Grant Thornton*,

12

133 S.W.3d at 363; *see also All Am. Life & Cas. Ins. v. Vandeventer*, No. 2-05-016-CV, 2006 WL 742452, at *3 (Tex. App.—Fort Worth Mar. 23, 2006, no pet.) (mem. op.) (declining to review defendant's limitations arguments in interlocutory appeal from class-certification order and noting that generally courts review limitations issues on direct appeal); *Enron Oil & Gas Co. v. Joffrion*, 116 S.W.3d 215, 219 (Tex. App.—Tyler 2003, no pet.) (recognizing that in appeal of class-certification order, question before appellate court is "whether the propriety of [defendant's] conduct can and should be decided on a class-wide basis," not substantive merits of case). "Limitations defenses generally present common questions, rather than individual ones, because a limitations defense's merits rest on two facts: (1) the date on which the statute of limitations accrued and (2) the date on which the action was filed." *Lon Smith & Assocs., Inc. v. Key*, 527 S.W.3d 604, 631 (Tex. App.—Fort Worth 2017, pet. denied). Fact (2) is a common issue in "virtually every class action because the entire class gets credit for the filing date of the class-action petition." *Id.* And fact (1) in this case can be resolved on a class-wide basis for all class members (like Hoppenstein) who executed, extended, or renewed leases before October 1, 2014 but not during the class period.

We therefore decline ACC's invitation to address the merits of its limitations defense and instead conclude that the trial court did not abuse its discretion in determining that Hoppenstein and Spirer are typical and adequate class representatives. *See Graebel/Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24, 30 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.) (rejecting defendant's argument that class was "improperly defined because it potentially include[d] class members whose claims are barred by the statute of limitations"); *Health & Tennis Corp. v. Jackson*, 928 S.W.2d 583, 588 (Tex. App.—San Antonio 1996, writ dism'd w.o.j.) (noting that appellate court reviewing certification order may not determine validity of

13

defenses asserted against class because probability of success on merits is not appropriate standard by which to measure class certification), *overruled on other grounds by Bernal*, 22 S.W.3d at 434–35.

As to Berry,[8] ACC argues that she had no standing when the suit was filed because her claim had been "mooted" by her receipt of the 2018 addendum months before, *see In re M.M.O.*, 981 S.W.2d 72, 81 (Tex. App.—San Antonio 1998, no pet.) ("Because a personal stake in the litigation is necessary for justiciability, courts have held that a class action is moot when the class representatives' claims become moot before they seek class certification."), and that—in any event—her claim was rendered "atypical" of the class by her admitted refusal to sign the addendum. However, Tenants allege that the addendum was inadequate to meet the statutory requirements and have placed the adequacy of the addendum at issue in their pleadings. Therefore, the questions of whether the addendum was sufficient to meet the statutory requirement and—if the addendum was sufficient—whether it would have a retroactive effect so as to extinguish a tenant's statutory remedies for a landlord's prior violation are legal questions going to the merits of the parties' dispute. Those questions are not appropriately decided in determining whether a party is an adequate class representative. *See id.* ("In an appeal under section 51.014(a)(3), we do not consider questions related to the merits of the class claims, nor do we consider the probability of the class's success on the merits.") Furthermore, even assuming that the 2018 addendum met the statutory requirements—which is the scenario on which ACC's "mootness" and standing argument appears to rest—Berry would nonetheless have a personal stake and "cognizable interest" in the issue of whether she is entitled to statutory

---

[8] In its certification order, the trial court found that Berry lived at one of the ACC properties "under a residential lease executed in 2017, for a lease term that continued . . . through May 11, 2018."

14

damages for ACC's alleged statutory violations for the period *before* she received the addendum. ACC's argument assumes that the merits of such question lie in its favor. But, again, we may not consider the merits of a claim on interlocutory appeal of a certification order. *See id.*

We reach the same conclusion as to ACC's argument that Berry's admitted refusal to sign the addendum rendered her claim "atypical" of the class. As already discussed, in light of the common issues of fact and law—e.g., whether a landlord is strictly liable to its tenants for violation of Sections 92.056(g) and 92.006(c), whether ACC knew about the statutory requirements, and what scope of control the parent company exercised over its subsidiaries—this purportedly "uncommon"[9] issue of Berry's refusal to sign the addendum does not render her *claims* atypical of those of the class, even if her status as a non-signatory to the addendum is. *See Southwestern Bell Tel. Co. v. Marketing on Hold Inc.*, 308 S.W.3d 909, 920 (Tex. 2010) (noting that pursuant to express language in Rule 42(a), typicality inquiry focuses on whether party's "*claims* are typical of the class," not whether party's individual characteristics and status are typical). On this record, the trial court could reasonably have concluded that the class representatives' claims and defenses are typical of the class and that Berry, Hoppenstein, and Spirer are adequate representatives. We accordingly overrule ACC's second issue.

### Declaratory and injunctive relief

In its third and final issue, ACC contends that the trial court erred in certifying a class, under Rule 42(b)(2), "as to a cause of action for declaratory and injunctive relief regarding

[9] Neither the factual question of how many class members received the addendum but did not sign and return it to ACC has been determined, nor has the legal question of whether tenants were required to sign and return the addendum for it to be effective (assuming that the addendum was statutorily sufficient and operated retroactively so as to defeat the claims of tenants who received it).

15

the 2018 lease addendum's and ACC's current lease agreements' respective compliance with Texas Property Code §§ 92.006 and 92.056(g)" (the Equitable Claim).[10] ACC explains the alleged error thus: "The factual record in no way supported certification of th[e Equitable C]laim because: (1) Plaintiffs' operative petition at the time of the class certification hearing failed to actually state a separate claim for equitable relief and (2) Plaintiffs have no class representative for such a claim."

The record belies ACC's first contention. In their second amended petition (which was the "operative," on-file petition when the class-certification hearing occurred), Tenants stated,

> A suit may be maintained as a class action if the prerequisites of Rule 42(a) are satisfied and 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' [*See* Tex. R. Civ. P. 42(b)(2).] As a part of the requested relief in this litigation, Plaintiffs, Individually and on behalf of all others similarly situated, seek specific legal determinations pursuant to Rule 42(b)(2), to include . . . sufficiency of ACC's 2018 Lease Addendum to meet the disclosure requirements of Section 92.056(g); . . . sufficiency of ACC's 2018 [to] current leasing agreements in meeting the disclosure requirements of Section 92.056(g); . . . [and] declaratory or injunctive enforcement of Section 92.056(g) compliance . . . .

---

[10] The trial court's order certifying the Equitable Claim reads,

The Court grants certification pursuant to Rule 42(b)(2) to answer and declare: (1) the existence of the statutory right to notice specifically in mandated form, (2) applicability of the Anti-Waiver requirements under Section[] 92.006, (3) whether condition precedents are required to seeking judicial remedies, (4) whether failure to provide the required notice in correct format affects past and future reliance of [sic] on defenses and allowable damages. This certification under Rule 42(b)(2) will provide binding findings declaring whether the 2018 Lease Addendum meets the disclosure requirements of Section 92.056(g); whether the 2018 Lease Addendum violates the Anti-Waiver provision of Section 92.006; whether the ACC residential lease agreements since 2018 to the present are compliant with § 92.006 and § 92.056(g); and (4) determine the appropriateness of formal prohibition of continued use of residential leases that do not contain the required statutory language in legislated format.

16

In its September 30, 2020 supplemental brief opposing Tenants' motion for certification, ACC expressly argued against certification of a "declaratory or injunctive relief class" as requested in Tenants' second amended petition because Tenants did not "state a separate claim for such relief" and "still only allege the same two claims from their previous petition." Therefore, ACC's argument continued, it had not been provided "reasonable notice regarding the scope and type of claims now being asserted" in Tenants' second amended petition. *See* Tex. R. Civ. P. 21(a) ("every pleading, plea, motion, or application to the court for an order . . . must state the grounds therefor [and] must set forth the relief or order sought").

In support of its argument, ACC cites a case in which the appellate court expressed concern with changes to class-action petitions made after a certification hearing, but that case is distinguishable because the changes there were significant enough to deprive the defendants of sufficient opportunity to present evidence, cross-examine witnesses, and object to certification. *See M.M.O.*, 981 S.W.2d at 86 (holding that trial court abused discretion in admitting record from prior certification hearing and failing to conduct adequate new hearing where, by time of second hearing, plaintiffs' amended petition was seeking declaratory and injunctive relief against attorney general rather than previous claims for monetary relief against only child-support obligors); *see also Bailey v. Kemper Cas. Ins.*, 83 S.W.3d 840, 848–49 (Tex. App.—Texarkana 2002, pet. dism'd w.o.j.) (noting that when amended petition affects "essence" of allegations, changes "basis for certifying" class, adds another defendant, raises new cause of action or defense, or requests additional relief such that defendant or class members would be "adversely affected," trial court may need to conduct second hearing). Here, the differences between Tenants' second and third amended petition as to their respective statements of the

17

Equitable Claim were not so significant as to deprive ACC of any opportunity to oppose certification of the claim, and ACC has not alleged any ways in which it was adversely affected.

Furthermore, Texas's fair-notice pleading standard supports the conclusion that Tenants' recitation in their second amended petition regarding the Equitable Claim was sufficient to put ACC on notice of the claim, especially considering that ACC specifically responded to Tenants' request to certify a "declaratory and injunctive relief class" in its supplemental brief in opposition. *See* Tex. R. Civ. P. 45 ("All pleadings shall be construed so as to do substantial justice."), 47 (requiring pleadings to contain "a short statement of the cause of action sufficient to give fair notice of the claim involved"); *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007) (noting that fair-notice standard is "relatively liberal"). ACC by its argument that Tenants failed to "state a separate cause of action" for equitable relief seems to imply that Tenants were required to use a particular format in their "operative" petition—e.g., placing the request for equitable relief under a separate heading such as "Count Three: Equitable Relief"—but it has not cited any authorities requiring such format, and we have found none. We thus find ACC's first argument against certification of the Equitable Claim unavailing.

In its second argument challenging the trial court's certification of the Equitable Claim, ACC contends that there is no class representative for the claim because Berry, Hoppenstein, and Spirer have no "live individual claim"—i.e., no standing. *See Heckman v. Williamson County*, 369 S.W.3d 137, 152–53 (Tex. 2012) ("Whether considering the standing of one plaintiff or many, the court must analyze the standing of each individual plaintiff to bring each individual claim he or she alleges [on behalf of the class] when that issue is before the court."); *Texas Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 255 (Tex. 2002) ("[I]f a putative class representative has no live individual claim, that individual has no standing to

18

bring suit on behalf of a putative class."); *see also Solotko v. LegalZoom.com, Inc.*, No. 03-10-00755-CV, 2013 WL 3724770, at *2 (Tex. App.—Austin July 11, 2013, pet. denied) (mem. op.) (noting that class representative's standing is "threshold matter" that may be challenged on interlocutory appeal of certification order). Specifically, ACC argues that none of the three class representatives are current tenants under an ACC lease and, thus, none have standing to challenge the compliance of post-2018 (i.e., current) lease agreements or to seek injunctive relief prescribing how ACC must draft its leases going forward. We agree with ACC on this point. *See Heckman*, 369 S.W.3d at 153 (noting that standing doctrine requires plaintiff's injury "likely to be redressed by the requested relief" and that if plaintiff seeks injunctive relief but "the injunction could not possibly remedy his situation, then he lacks standing to bring that claim"); *MET-Rx USA, Inc. v. Shipman*, 62 S.W.3d 807, 811–12 (Tex. App.—Waco 2001, pet. denied) (holding that class representative had no standing to pursue declaratory and injunctive relief seeking to "prevent others from experiencing the damages he has suffered" due to his ceasing use of allegedly harmful product and disavowal to use product in future). The class representatives have not alleged that they intend to execute future leases with ACC, and without any of them being current tenants or having expressed the intention to be future tenants, they failed to establish the "redressability" element of standing as to their requested declaratory and injunctive relief related to ACC's current and future leases. *See Heckman*, 369 S.W.3d at 153. The trial court abused its discretion, therefore, in certifying the portion of the Equitable Claim pertaining to ACC's post-2018 leases.

As to the 2018 addendum, ACC argues that because Berry admittedly did not sign it,[11] she had no standing to assert claims for declaratory or injunctive relief with respect thereto. However, as we have already concluded above, because Tenants challenge the statutory compliance of the disclosures in the addendum—and whether the disclosures are compliant is an issue going to the substantive merits of this lawsuit—we cannot conclude in this interlocutory appeal that Berry had no live, justiciable controversy as to the addendum that a declaration and related injunctive relief would not resolve. Accordingly, the trial court did not err in certifying the remainder of the Equitable Claim, specifically as it relates to the 2018 addendum.

## CONCLUSION

Because the trial court erred in certifying a declaratory and injunctive claim as to ACC's post-2018 leases, we modify the trial court's certification order to remove references to such claim, as indicated below by strikethrough for deletions and underlining for corresponding grammatical corrections:

> 25. ~~Although~~ Defendants do not contest ~~its~~ their noncompliance with the statutory mandate of Texas Property Code Section 92.056(g) prior to circulating the "2018 Lease Addendum~~,~~." ~~Plaintiffs assert the Defendants remain non-compliant with the statutory mandate of Texas Property Code Section 92.056(g). Thus, there is a live and justiciable controversy at issue.~~ Plaintiffs request relief enumerating the existence of the statutory right to notice specifically in mandated form, scope and availability of enforceability rights and remedies, and allowable damages. Plaintiffs further seek findings regarding whether the 2018 Lease Addendum ~~and residential leasing agreements since March 2018 are~~ is compliant with Texas Property Code.

> 26. The Court grants certification pursuant to Rule 42(b)(2) to answer and declare: (1) the existence of the statutory right to notice specifically in mandated form, (2) applicability of the Anti-Waiver requirements under Section~~s~~ 92.006, (3) whether condition precedents are required to seeking judicial remedies,

---

[11] Indisputably, neither Hoppenstein nor Spirer received the 2018 addendum as they were no longer tenants at the time.

(4) whether failure to provide the required notice in correct format affects past and future reliance ~~of~~ on defenses and allowable damages. This certification under Rule 42(b)(2) will provide binding findings declaring whether the 2018 Lease Addendum meets the disclosure requirements of Section 92.056(g)~~;~~ and whether the 2018 Lease Addendum violates the Anti-Waiver provision of Section 92.006.~~; whether the ACC residential lease agreements since 2018 to the present are compliant with § 92.006 and § 92.056(g); and (4) determine the appropriateness of formal prohibition of continued use of residential leases that do not contain the required statutory language in legislated format.~~

27. The Court finds that certification is appropriate to address claims seeking declarations of whether residential leases, including the use of the 2018 Lease Addendum, implicating an actual controversy regarding questions of construction or validity, which will serve a useful purpose or will terminate the certain controversies between the parties, including~~: (1)~~ legal sufficiency of ACC's 2018 Lease Addendum after testing compliance with Section 92.006(c) and/or Section 92.056(g)~~; and (2) legal sufficiency of ACC's 2018-current leasing agreements after testing compliance with Section 92.006(c) and/or Section 92.056(g)~~.

We affirm the class-certification order, as modified.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Smith

Modified and, as Modified, Affirmed

Filed: September 3, 2021